Services at Al. Will the appellant be reserving time? Yes, your honor. I would like to reserve two minutes for rebuttal. Two minutes? That is granted. Now I'm going to time you, so I would suggest you time yourself as well. Okay, so why don't we then hear from counsel? You may proceed. May it please the court. Ronald Eisenberg for the government parties. This is a case of a missing element that wasn't actually missing at all. The habeas petitioner has argued that a statutory amendment after he committed his crime in effect relieved the commonwealth of its burden to prove one element of the Pennsylvania offense of endangering the welfare of children. Now the element in question requires the commonwealth to prove that the defendant supervised the welfare of children, but instead of disappearing from this case, as Spanier suggests, that exact burden was stressed to the jury over and over and over at the trial from the trial judges opening instructions to the jury in which he explicitly told them that the commonwealth must prove beyond a reasonable doubt that Spanier inter alia supervised the welfare of children. And then repeatedly through all of defense counsel's arguments, both in his opening address and in closing, right up through some of his final words to the jury when he said there's no evidence that Graham Spanier endangered the welfare of children, that he knowingly endangered the welfare of children over whom he supposedly had supervisory responsibility, which I told you is an element of the offense. And he had, as had the trial judge, and the commonwealth never questioned those statements, never challenged them, never denied that burden. On the contrary, the commonwealth accepted that burden to prove that Spanier supervised the welfare of children and argued that it had met that burden. Now I believe that brings us, your honors, to the word or in the statutory amendment and thus to commonwealth versus linen from there to Rogers versus Tennessee. The existing statute at the time of the crime in relevant part referred to a parent, guardian, or other person supervising the welfare of the child. In 2007, the legislature added at the end of that phrase the words or a person that employs or supervises such a person. Now that or was explanatory. It was added to describe and clarify the prior phrase person supervising welfare. We know that not only because Pennsylvania courts and courts around the country have commonly construed the word or to operate in that fashion, but we know it from the actual drafters of this amendment, which was the Philadelphia Archdiocese Grand Jury in 2007, which published a report identifying what it thought was an existing statute on precisely this point of whether the existing statute could cover people who were not in direct supervision of children, but were in indirect supervision of their welfare, which they exercised through their management of others. And the grand jury decision is that this amendment didn't actually change anything. That's correct, your honor. Indecision, it was always this way and this was just a clarifying amendment. Correct, your honor. Now to be clear, the grand jury didn't know that at the time. There's a reason that the legislature and the Lynn decision wound up at the same point and it's because they started from the same point. They were both the culmination of two parallel approaches to the problem of institutional sexual assault of children that arose from the grand jury report. The first to happen in time was the when nobody could be sure how the court would wind up interpreting the existing statute, but that happened when further investigation of the grand jury charged Monsignor Lynn and the grand jury in its next report explicitly argued that the existing statute was sufficient to cover that indirect supervision under the old statute and the at the same place that the legislature had brought us through the amendment to the statute. So, Mr. Reisenberg, and that was an excellent background that you gave to set the issue here, why shouldn't we be concerned with the jury instruction that was given which mirrored the 2007 language? Well, for two reasons. Let me finish my question because how do we know how do we know that the jury didn't find Dr. Spanier guilty because of the language that was added in 2007 rather than the original language? There are two issues, Your Honor. The first is that if the jury found him guilty under the new statute, but the new statute means the same as the old statute, then there's no error and the meaning of the new statute is construed in the final analysis by the state courts. And I'll return to that point, but I'd also like to stress the other point, which is that even if there had been error, then the defendant on a habeas petition had the burden of proving injurious effect. That is, that his interpretation of the statute, the one that was rejected by all the state courts and that was exactly contrary to the grand jury proposed, that his interpretation was the one that the jury was likely to have chosen. And that's just not reasonable. That's not credible in light of the fact that it would be that the jury could never have ferreted out this so-called fourth category entirely on its own. This fourth category had never been suggested anywhere before trial. It was completely contrary to everything else that the judge, the defense lawyer, and the commonwealth had said to the jury up to that point. And now to return to that question of statutory analysis, your honor, it was hardly unreasonable for the state courts to conclude that the amendment meant exactly what its drafters said it was supposed to mean, which is not to create a fourth category, but simply to explain and clarify that the third category, that the one right before it, to refer to supervisors with supervisors who supervised the welfare of children through their management of others. That's the quote from Lynn and that's exactly what the new statute meant, which means that they were coterminous. Now the defendant's problem is that he can't just tell you that the state courts were wrong in their interpretation of the statute. That wouldn't be Rogers versus Tennessee. That means not just that the state court's interpretation was wrong, but that it was indefensibly wrong. That it was so out there, so outrageous, that it's unjustified and inexcusable. And that Rogers versus Tennessee standard, I should point out your honors, is the standard only for direct review. Rogers was a direct review case directly from the Supreme Court of Tennessee. This is a habeas case and the standard gets even higher and we know that because of the next case after Rogers, which was Metrish versus Lancaster. And Metrish made clear that a Rogers claim on habeas, because of the deference standard, requires the federal court not just to find that the state court's interpretation was not just wrong, but indefensible, but to find further... Before you get too far down this road, we have a threshold to meet, I think. Was this Rogers claim procedurally defaulted? Well, I think it was not, your honor. We've technical, but the fact is that there's a distinction between an argument that the state court was wrong and an argument that the state court's ruling was indefensible under Rogers. Right, right. But was this fairly presented to the state court? No, your honor. We say it's not. Rogers was never cited. Bowie was never cited. Metrish was never cited. And the only case that was cited that's along this line at all, Marx versus the United States, was cited only for the proposition that equal protection or due process requires, precludes the use of a new statute, the basic argument of ex post facto. Rogers is not an ex post facto claim. Hold on, procedurally now. If it's procedurally defaulted, then EDPA doesn't apply, right? Then our standard of review would be de novo here, right? Well, on the Rogers claim? No, your honor. If it's procedurally defaulted, the defendant already loses because that's his only federal claim. Okay. Well, it seems to me that you're arguing that there's a deference. I guess that's an alternative argument. You're right, your honor. And I'm sorry not to have clarified that. I skipped over the default argument. If the claim is defaulted, case is over. If the claim is not defaulted, then we apply at the deference and the case is still over because the standard is so high. In Rogers, the Tennessee Supreme Court explicitly overruled prior case law. Now, it was old case law. It hadn't been used a lot. But if you'd asked anybody the day before that decision what the law was, it would have been the law under those prior cases. Metrish was even more dramatic where the Michigan intermediate state courts had repeatedly held that there was a defense available under the statute. And the Michigan Supreme Court reversed them and said, we know that they said that. We think they're wrong. That's not what the statute means. And the United States Supreme Court said, this is not even a close question under the Rogers test and under ADIPA. So this case where nothing was overruled is not even close to the cases that in Rogers and Metrish were not close. There were no prior cases to the contrary under Pennsylvania law. There was no case before Lynn that addressed a question like this one. There was no case after Lynn that addressed the new statute and its effect on the old statute. And so there can be no Rogers claim, let alone a Metrish ADIPA claim. Now, I think I've made clear what the standard is under Rogers, what happened in those other cases. And I think I've also made the point, and just to be clear, it's an alternative argument about injurious effect. It's the defendant's burden, the habeas petitioner's burden to show injurious effect. And basically what happened here is that if the petitioner just threw it up and say, well, in theory, hypothetically, there are two different possibilities. They could have read the statute my way, this fourth category, or maybe they didn't. And the court below said, yep, there are two theoretical possibilities. They could have read it as having a fourth category, establishing a fourth category or not. That's not the end of the analysis. That's the beginning of the analysis. And in order to make the proper analysis under cases like Hedgepeth-Polito, the court then has to look at the record, how the case was tried. This jury was never told, never, that it could convict the defendant solely on the basis that he supervised other people who were supervising the welfare of children. This jury was told over and over again that this defendant was supervising the welfare of children, albeit indirectly, consistently with the Lynn decision, which held that indirect supervision is covered by the original statute. Statute of limitations argument that's raised. Yes, Your Honor. There is a statute of limitations argument. As we say, it's not properly before this court. In state courts, the defendant raised two different kinds of statute of limitations argument. One seeking to bar prosecution altogether, seeking an arrest of judgment. The other addressed jury instruction, seeking a new trial. He could have raised both of those on federal habeas. He chose only to raise the first one, the notice claim, the claim that the statute of limitations should have been an element to the offense. He didn't do that on habeas. He only raised the arrest of judgment claim. That's not the relief the lower court granted him. You know, the lower court only granted a new trial. The defendant is not allowed to expand the relief that was provided by the lower court. He could have had he cross-appealed. The lower court granted a certificate of trial in his claim for relief. Not on the claim that he presented in the lower court, Your Honor. That's the problem. He could have presented on habeas both of his statute of limitations claims. One of them was for a new trial. But the one he chose was the one that the state court record shows was only for an arrest of judgment. And that expands the grant of relief below. Well, your adversary argues that, hey, this is just a ground supporting the judgment itself. The judgment, I'm sorry, Your Honor. The judgment was a conditional writ allowing a new trial. But the relief sought by the statute of limitations claim presented in federal court went beyond that. And so it does not just support the judgment below. And that's why the Jennings case applies. But a brief word about the merits of the claim in any case, Your Honor, were the court to raise it. It's entirely based on an interpretation of state law. Federal law does not require statutes of limitation to be pleaded in a complaint to bill of information or some kind of special notice to be given before trial. And the argument was that state court requires that. And since state law requires it and it didn't happen, then there's a due process violation for not meeting the state court requirement. The problem is the state courts rejected that interpretation of state law and their interpretation is binding. The state court said only when there is a tolling provision, and they specified section 5554 as our tolling provision, only when the commonwealth is relying on a tolling provision must there be a pretrial notice of the sort that the defendant is asking for. This, said the court, was not a tolling provision. The applicable statute of limitations here was not a tolling provision and therefore state law did not require pretrial notice. Your time's about up. Let me ask my colleagues, Judge Porter, do you have anything more? No. And Judge Fischer? No. Okay, thank you. We'll hear from you on rebuttal. Thank you, Your Honor. Now we'll hear from counsel for the appellant. Good morning, Your Honors. May it please the court, Bruce Merenstein on behalf of Appley Graham Spanier. With regard, I'm going to start with the Rogers issue. With regard to the Rogers issue, that was not raised in the state court for two very fundamental reasons. And most fundamentally because it was undisputed throughout the state court proceedings, among the commonwealth, the state courts themselves, obviously the defense, that Dr. Spanier was being charged with the 2007 statute. That was a disputed issue from the beginning. Every single time that we raised that, and you can look at the preliminary hearing, you can look at the pretrial briefing, you can look at the charts, proposed instructions to the jury, the charge conference, every single time the commonwealth took the consistent position, reaffirmed, yes, we're applying the 2007 statute, not the 1995 statute that was in existence at the time of Dr. Spanier's conduct. And the state trial court affirmed that. The state trial court and its post-trial opinion, in which it recommended that Dr. Spanier's one conviction be affirmed, made it clear, repeatedly said, in that opinion, the 2007 statute applies. The court quoted the 2007 statute, the language, and made it clear that the court had applied that statute at the commonwealth's request and had instructed the jury on the basis of that statute. So the question in the state courts was whether it was proper to charge Dr. Spanier for conduct occurring in 2001 with a statute that went into effect in 2007. So the issue was a pure ex post facto issue in the state court. It was not until we got to the habeas court that, for the first time, the commonwealth said, you know, forget everything that happened in the state courts. In fact, we charged Dr. Spanier violating the 1995 statute, contrary to everything they had always said in this case. And in fact, it wasn't even until we got to this court that they came up with a new argument in support of that and said, yeah, look the bill of information, which cites the 2007 statute, but doesn't include that key language that was added in 2007. So in the state courts, it was clear, and it was beyond dispute, and it was argued about repeatedly throughout the proceedings up until the time the jury was charged. Until the last words between us, counsel for Dr. Spanier, and the court, when the court told us what was going to be charged to the jury, it was clear that the commonwealth was charging Dr. Spanier with violating the 2007 statute. So there was no Rogers issue until the commonwealth changed its tune when we got to habeas court. And at that point, it said, we're changing our mind, we're going to rewrite history. And in fact, the 1995 statute was applied. And therefore, you had to raise this as a Rogers issue, because the question is whether or not the 1995 statute was unexpectedly changed, whether there was a new and unexpected interpretation of that statute. But this issue was never at issue in the state court. We did raise a due process issue resulting from improper instruction. And our due process argument was a classic due process argument that this court is often evaluated most recently in depth a couple years ago in the Bennett decision that we cite. And that is that because of the jury instruction, the jury was not required to find a required element of the charge on which Dr. Spanier was convicted. It did not, it was not required to find that it was met beyond a reasonable doubt. Pennsylvania law, coming from the Lynn decision, Mr. Eisenberg cited, Pennsylvania law is clear that under the statute that should have applied to Dr. Spanier, the one in effect in 2001, the commonwealth was required to prove beyond a reasonable doubt to the satisfaction of a unanimous jury that Dr. Spanier was supervising the welfare of a child. This jury was not required to find that. This 2007 statute has broader language on broader language than that. And it's just, I think it's fanciful. And it's, again, it's an argument that's only been made for the first time in this court. In fact, in the reply brief was the first time that we saw the commonwealth's argument that or doesn't mean or. If you look at the plain language of the statute, which is the same plain language under which the jury was instructed, or is disjunctive. And as this court on Bong said in all criminal cases, that in a criminal statute, the use of the word or is disjunctive. And there is simply no way to look at the language of the 2007 statute and not conclude that it creates a separate category of individuals who are subject to liability, who were not subject to liability, according to the Supreme Court of Pennsylvania, who were not subject to liability before 2006. So Rogers was not an issue. The statute absolutely changed the question of exhaustion, not procedural default, but exhaustion. Why? How do you argue and effectively argue that you exhausted your due process claim before the state courts? The due process claim, Your Honor, that is that issue here. And the one that the magistrate judge correctly granted relief on is the claim that, again, is a sort of garden variety habeas due process claim arising out of faulty jury instructions. Again, Bennett is the most recent case where this court analyzed this issue in depth. And that claim we raised in the Superior Court, admittedly in passing, because at that point, the real issue was that the 2007 statute had been applied to Dr. Spanier's conduct six years earlier. And there is no question, you know, candidly, there's no question that we focused on the ex post facto issue with regard to that particular element of the charge. But we did raise the issue that Dr. Spanier's due process rights were violated because the jury was not required to find a required element. That is that he was supervising the welfare of a child. The Supreme Court of Pennsylvania, unequivocally in Lynn, said the Commonwealth must prove beyond a reasonable doubt that the defendant was supervising the welfare of a child, assuming the defendant is not a parent or a guardian. Here, the jury was not required to find that, consistent with the 2007 statute, which does not require such a finding. That statute... Okay. Talking about Lynn, the meaning of Section 4304, the 1995 version, why, since that's not a, that's a state law issue, clearly, the interpretation of what that means, why is that not cognizable in habeas? Or why is it cognizable in habeas? Seems like there's a real question of cognizability here. Well, because this is not a challenge, for example, to the holding in Lynn. I mean, we accept that Lynn establishes, as the Supreme Court of Pennsylvania, you know, which decided Lynn, it determines what the law of Pennsylvania is. And our arguments on ex post facto, on due process, proceed from the acceptance of Lynn as establishing the law in Pennsylvania. And Lynn basically has two holdings, one of which I've referred to a number of times, which is that the Commonwealth, under the statute, in effect, before 2007, which should have been the one that applied here, the Commonwealth has to prove beyond a reasonable doubt that the defendant supervised the welfare of a child. But second, it held that defendant could supervise the welfare of a child indirectly, not even if the defendant does not directly interact with the child. That's not what the jury was instructed on here. The jury was not instructed in any way, consistent with Lynn, the jury was not instructed, you must find that Dr. Spanier supervised the welfare of a child period. And you may find so even if you find he didn't directly interact with the child. That's what Mr. Eisenberg wants you to believe the jury was It seems like Mr. Eisenberg, he answered my first question on the jury instruction question. And but the question for you, that I would pose, you're here on habeas making a due process claim. We have the decision of the Pennsylvania Supreme Court in Commonwealth versus Lynn. And, you know, for you to succeed under under metrish, you have to show that the decision was unexpected. And indefensible, in order to even have a chance to make the argument that you're entitled to habeas relief. How can you do that here? With respect, Your Honor, that's not our argument, our argument. I mean, first of all, our primary argument doesn't rely on metrics, because it's an ex post facto argument. I mean, in this case, again, the record, the state record is unequivocal that the 2007 statute applied. So So first of all, we have a separate argument does not require any analysis of metrics or application of metrics. But even our due process argument. I mean, what the Commonwealth has done is has basically argued that this is a Rogers slash metrish case or buoy. That's not what this case is about. Because this case is not about in a new and unexpected interpretation by the Pennsylvania Supreme Court of the statute that was in effect in 2001. That's not at all what it's about. That's not what happened here. What happened was the 2007 statute was applied to Dr. Spanier. And because that statute was applied, that's an ex post facto problem. And because the jury was instructed on the basis of that. Now it's not an it's it's not the the application of that statute doesn't automatically make an ex post facto problem. You have to show you have to show that the state's interpretation of that statute was unexpected and indefensible. Well, to recover, recover under your due process claim in habeas. That's the metrish analysis, but that is not an ex post facto analysis. If the 2007 statute was applied here to conduct in 2001, and I think the record is unequivocal that it was, then the only question is whether or not the 2007 statute criminalized conduct that was not criminalized before 2007. Mr. Eisenberg, Mr. Eisenberg answered my question on that on the basis that Lynn said the two statutes were the same. Lynn, absolutely. Your Honor, there is no way that Lynn said that. Lynn absolutely positively did not say that. In fact, that was an argument the Commonwealth made in Lynn, and the court said we're not reaching that issue because we're only interpreting the 1995 statute, and they interpreted it the same way we do in this case. As broadly, didn't the Supreme Court, didn't the Supreme Court of Pennsylvania interpret the 1995 statute to be as broad as the Pennsylvania legislature redefined that statute in 2007? No, Your Honor. With respect, I think absolutely not. I think the Pennsylvania Supreme Court in Lynn said we're not addressing the meaning of the 2007 statute because it's undisputed that that statute does not apply here and was not applied here, and so it interpreted the 95 statute to require that the defendant supervise the welfare of a child and that they could do so indirectly. That's not what the 2007 statute says. Not on its face. It's not what the jury was instructed in this case. The 2007 statute does not say that the defendant must be one of the same three categories, parent, guardian, or supervising the welfare of a child, but the defendant may supervise the welfare of a child indirectly. That's what the court held in Lynn. That is absolutely not what it says in the 2007 statute. There is no way to read the language that says that the defendant must be supervising the welfare of a child or be a person that employs or supervises such a person. That is a separate category. That is a different category, and it is not required that somebody in that category supervise the welfare of a child. If I can use the Lynn case as an example, Your Honor, the Supreme Court of Pennsylvania and the Superior Court in Lynn struggled with the issue of whether or not the facts could support the claim that Lynn supervised the welfare of a child. That was a heavily contested issue. The Superior Court came out one way. The split Supreme Court came out the other way. That was a difficult, as the court said, it's a fact-bound determination. Under the 2007 statute, the court, the jury, the Commonwealth, they don't have to struggle with that difficult fact-bound decision because it's clear that Lynn was supervising the priests. He didn't dispute that fact, and it's clear that the priests were supervising the welfare of children. It's an easy box to check. I don't have Lynn in front of me, unfortunately, but I do have the state court decision in this case where it says the Commonwealth argued to the Supreme Court, and this is on page, gosh, I can't even find the page number here, but it's in the Superior Court opinion. The Commonwealth argued to the Supreme Court that the language of the pre-2007 EWOC statute plainly encompassed persons supervising others who had contact with minors. The Supreme Court agreed, holding that by its plain terms, the pre-2007 statute encompasses all forms of welfare. I hear you saying today that the 2007 statute really had nothing to do with that case. I'm talking about Lynn. Again, if you look at the Lynn decision, the Commonwealth made the argument that the 2007 statute made no changes. The same argument that Mr. Eisenberg has made this morning, and the Supreme Court said, we're not addressing that because we're only addressing the 1995 statute. Mr. Eisenberg talks about the proposal from the Archdiocese, the plain text of the 2007 statute just cannot support the argument that Mr. Eisenberg makes that it simply clarified the language. There is no question that the legislature intended to broaden the scope of individuals who are subject to liability under the statute, that it broadened the scope of that particular element that is the one that is at issue here. It allowed for liability, criminal liability, against people who were not covered before 2007. The jury was specifically instructed here that it could find Dr. Spanier guilty on the basis of that expanded scope. The same jury, in what Mr. Eisenberg leaves out of the supposed record from the state court, is all of the evidence that was presented. The evidence the jury heard that Dr. Spanier was Tim Curley and Gary Schultz, the other administrators. So that was undisputed. They heard Tim Curley and Gary Schultz admit on the stand that they had pled guilty to endangering the welfare of a child. They heard that Tim Curley and Gary Schultz were primarily responsible for responding to Michael McQuarrie's report and for addressing it. They heard all of that evidence, all of which the Commonwealth repeated in its closing. And then the Commonwealth emphasized the fact that Dr. Spanier supervised the two of them. They talked about the buck stopping with him. They called him the boss. He was the top of the heap. The Commonwealth emphasized all of that evidence, which allowed the jury to rely on that new category that should not have been part of the case because it didn't come into the law until 2007 to find that element met. And that's an element that the jury clearly struggled with because it asked a question during deliberations. It was given that element in writing, unlike the preliminary instructions, which it was not given in writing. It was given it in writing to take back to the jury room for its deliberations. It was read that flawed instruction based on the 2007 statute twice because after its question, the court read it to them again. So the notion that the jury did not, I think it's almost certain that the jury relied, if you look at the entire record, particularly the evidence that was presented and the instruction itself, the jury had a much easier path to find that element to the charge met by looking at that fourth improper basis. Why isn't the new language, what you're calling the fourth category, encompassed by this language in land where the Pennsylvania Supreme Court said that supervision is routinely accomplished through subordinates and is no less supervisory if it does not involve personal encounters with the children. Isn't that the same concept as what you're calling the fourth category? No, with respect, your honor, it absolutely is not. What that is saying is that somebody who supervises somebody else, somebody who does not directly interact with children, a principal who supervises a teacher who has 30 kids in a classroom that the teacher is supervising then says that that principal, depending on the facts, and again, in Lynn, the court went on for dozens of pages discussing the facts because it's very fact specific, that that principal could, depending on the facts, be supervising the welfare of a child. Under the new language, that principal by definition is covered by the statute. He or she may not be supervising the welfare of a child, but you don't have to go through that difficult analysis that the court went through in Lynn because that principal under the new language, and all Lynn was holding was that principal could be, and Lynn could be, supervising the welfare of a child, depending on the facts. But under the new broader language, that principal automatically is. Now, he or she isn't automatically criminally liable because of other requirements, knowing endangerment. But in terms of this element, which is indisputably an element of the charge, it essentially establishes who would be subject to criminal liability under the 2007 statute, but not the earlier statute. That principal is already, the principal supervising the teacher, the teacher is supervising a classroom full of children. The principal automatically is included in that category under the 2007 statute. Under the prior statute, yes, under Lynn, under the prior statute interpreted in Lynn, that principal may be, may not be, depends on the facts, depends on what the jury concludes. But here, the jury was given both of those options, the much more difficult option of is Dr. Spanier, the head of this large university, who mostly is acting in this case through Curley and Schultz, is Dr. Spanier supervising the welfare of a child, or is he supervising someone else, like Curley, like Schultz, who themselves are supervising the welfare of a child? And I think here, you know, to move to the harmless error analysis, there's no question that the jury had a much easier path to finding this element met by relying on the language that should not have been in the instruction. Mr. Marinstein, why wasn't the jury instruction, as you argue that it was improper, why wasn't the jury instruction harmless error? Well, I think, again, for the reasons I was just briefly getting into is because the question for harmless error, I mean, as this court put it in Smith v. Horn, I mean, I know it has to be a similar situation, explained if the jury is given an improper instruction, a proper basis, you know, one that's consistent with the law to find that element met in an improper basis, if the improper basis is relatively straightforward compared to the more difficult proper basis, and that's the language of Smith v. Horn, then it's not harmless error. And this is not harmless error. I mean, the Commonwealth in its brief implies that, you know, as long as there was that is the Dr. Spanier himself supervised welfare of a child, it's harmless error. That's not the standard. I mean, just a few months ago, in this court's decision in Johnson, it reiterated that is not the standard. In fact, if the court is left in any doubt as to whether or not it affected the verdict, it's not harmless. But here, again, I think if you look at the two avenues the jury had on this element that obviously it struggled with, because it specifically asked about this element alone. On the two paths that it had, one that was proper under the 1995 statute that should have applied, one that was improper under the 1995 statute, it only came in in 2007. The improper one was a much easier path. Again, it was undisputed that Dr. Spanier supervised, among others, Curley and Schultz. Curley and Schultz, as the jury heard, pled guilty to endangering the welfare of children. You know, Curley and Schultz met directly with Michael McQuarrie. They met with Michael McQuarrie. Curley was the one that did all the follow-up. As the evidence showed, Schultz said, the ball is in your court, Tim, to take care of things. Again, the issue was not, is there other evidence that shows Dr. Spanier was involved enough to be supervising the welfare of a child? The jury had a much easier path to finding this element met by finding that Dr. Spanier was supervising Curley and or Schultz, and they were supervising the welfare of a child. That's not a proper basis for finding that element met and finding him guilty. That element is not met unless the jury concludes, whether directly or indirectly, that Dr. Spanier himself is supervising the welfare of children. Can you wrap it up, because if you have any other things you'd like to say? Well, all I would say, Your Honor, thank you for that opportunity. All I would say is that, again, to sort of encompass everything that I've been saying in response to the court's questions, this jury convicted Dr. Spanier on the basis of the 2007 statute. I think that is clear. Whether you look at it that way or you look at it the way the Commonwealth wants to now argue it in the habeas proceedings that it was based on, the 1995 statute, either way, Dr. Spanier was convicted without the jury being required to find beyond a reasonable doubt an element of the claim that Dr. Spanier himself supervised the welfare of children. That is a violation of his constitutional rights. We would ask you to affirm the trial court's ruling. Thank you, Your Honor. Judge Porter, do you have any other questions you'd like to ask? No. Okay. Thank you. Judge Fisher? No. Okay. Thank you. Thank you, counsel. We'll hear from the appellant in his rebuttal. I'm sorry. We can't hear you. I'm sorry. I didn't see that. I was muted. Okay. I'm sorry, Your Honor. In fact, the state courts explicitly relied on the equivalence between the old and new statutes. In the trial court's opinion, you'll see this at Act 1532-33. And in the superior court opinion, including the passage that Judge Chigaris read, you'll see that in the appendix at 1716-1717. The state courts explicitly said the reason that this was okay is because the new statute is coextensive with the old statute. That's why there's no ex post facto violation. That's why the jury instruction was okay. That's the point at which the defendant had to raise his Rogers claim if he was going to raise one. He didn't have to do it before trial. He had to do it once those rulings occurred. And he didn't do it. He says he didn't have to do it until after the Commonwealth responded to his habeas petition. But if that's true, then why did he cite Rogers in his habeas petition before he responded? You'll see that in 1839. That's where the defendant first introduced Rogers into this case before the Commonwealth had supposedly invited it. Now, the defendant says there's no way to read this 2007 statute to be equivalent to the 2001 statute. That's not up to the defendant to decide. The state court said the opposite. And for the defendant to have a habeas claim, he has to say not just that he disagrees with the state court's reasoning, not just that he disagrees with the grand jury's reasoning, not just that he disagrees with the legislative intent, but that the findings of the state courts in this case were indefensible extensions of Commonwealth versus Lynn, and not just in the habeas context that they were indefensible extensions. That's the direct review standard. But the question of indefensibility is beyond any possibility of fair-minded disagreement. That's what Metrish said. The defendant cannot meet that standard. The fact that there was an easier path, so-called easier path, actually disproves his argument. Because if there had been an easier path, this trial would have been over in five minutes. No one on either side disputed that Spanier was the supervisor of the other two. If that were enough, the trial would have been over on day one. The jury would have been out for five minutes. Everyone understood that there was the larger question that everyone kept telling the jury to decide, whether Spanier himself was a supervisor of the welfare of children. Thank you, Your Honor. Thank you. Judge Porter, any questions? No. Okay, Judge Fisher? No. Okay, thank you. Well, we'd like to thank counsel for their excellent briefing and excellent oral argument today under these somewhat unusual circumstances. We thank you. We wish you well and hope you and your families are well. And we'll take the case under advisement and ask Mr. Kane to adjourn court for the day.